IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CGC ROYALTY INVESTMENTS I, LLC, § *et al.*, § § Plaintiffs, § § v. § § ORDER SIMPLICITY, LLC, *et al.*, § § Defendants. § | Civil Action No. 3:18-CV-0711-N |

## ORDER

This Order addresses Plaintiffs CGC Royalty Investments I, LLC ("CGC Royalty") and CGC Asset Holdings, LLC's ("CGC Asset") (collectively, "CGC") application for preliminary injunction [22]. For the reasons set forth below, the Court grants the application.

### I. THE ORIGINS OF THE DISPUTE

This case concerns potential trade secret misappropriation. In March 2017, nonparties to this suit assigned their Order Management Software ("OMS"), a computer software, and its attendant intellectual property rights and intellectual assets (collectively, the "Asset Bundle") to CGC Royalty, a closed private equity fund. CGC Royalty then assigned the Asset Bundle to CGC Asset, its wholly owned subsidiary. In May 2017, CGC Asset entered into a business relationship agreement (the "BRA") with Defendant Order Simplicity, LLC ("OS"), a company that develops order management software as a service ("SaaS"). Pursuant to the BRA, OS obtained a license and right to use OMS, excluding its source code, in

ORDER – PAGE 1

servicing customers in exchange for monthly royalty payments to CGC Asset. In relevant part, the BRA articulated that OS could not assign, delegate, or transfer the agreement or any of its accompanying rights without the prior written consent of CGC Asset and that any attempted assignment in violation would be void.

In March 2017, Defendant MyndShft Technologies, LLC ("MyndShft"), an order fulfillment company, expressed interest to CGC in utilizing OMS in its business. Believing MyndShft may be another potential licensee, CGC introduced MyndShft to OS. Over the next several months, MyndShft engaged in preliminary discussions with CGC and OS to determine whether licensing the Asset Bundle from CGC, acquiring OS, or some other combination would best serve MyndShft's business purposes. Eventually, MyndShft decided to acquire OS. In September 2017, Defendant Ron Wince, MyndShft's Chief Executive Officer, informed CGC as such, but indicated that MyndShft was still interested in discussing acquisition of the Asset Bundle from CGC. MyndShft and CGC thus continued to negotiate, even signing a mutual nondisclosure agreement and discussing a purchase price and structure for a potential deal.

In November 2017, while MyndShft and CGC negotiated but unbeknownst to CGC, MyndShft and OS entered into a business purchase agreement whereby MyndShft acquired all rights, title, and interests of OS – including all licenses – in exchange for $50,000. MyndShft and OS further agreed upon an assignment of intellectual property pursuant to which OS irrevocably sold, transferred, and assigned to MyndShft all of its assets, including its worldwide rights, title, and interests in several categories of property. Neither MyndShft nor OS informed CGC about these agreements until several months later.

By February 2018, MyndShft and CGC's negotiations to acquire the Asset Bundle had come to an impasse. In March 2018, Wince finally informed CGC that MyndShft had assumed OS's rights, including those under the BRA. Wince indicated to CGC that MyndShft would thus be able to approach future customers for use of OMS in exchange for a defined royalty payment to CGC Asset. But Wince did not acknowledge that the BRA required CGC Asset's written consent prior to servicing future customers.

As a result, CGC filed the instant lawsuit under this Court's diversity and federal question jurisdiction. In it, CGC brings claims against MyndShft, OS, and Wince for breach of the BRA; common law fraud; tortious interference with existing contract; tortious interference with prospective business relations; trade secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE § 134A; trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18. U.S.C. § 1836; conspiracy; declaratory relief; and attorneys' fees and costs. As part of its complaint, CGC includes an application for preliminary injunction on its trade secret misappropriation claims under TUTSA and DTSA. For the reasons set forth below, the Court grants CGC's application.

## II. THE PRELIMINARY INJUNCTION STANDARD

The Fifth Circuit set out the requirements for a preliminary injunction in *Canal Authority of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). To prevail on a preliminary injunction application, the movant must show (1) a substantial likelihood that the movant will ultimately prevail on the merits, (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the movant outweighs

ORDER – PAGE 3

whatever damage the proposed injunction may cause the opposing party, and (4) that granting the injunction is not adverse to the public interest. *Id.*; *see also Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

To qualify for a preliminary injunction, the movant must clearly carry the burden of persuasion with respect to all four requirements. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). If the movant fails to establish any one of the four prerequisites to injunctive relief, relief will not be granted. *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). A movant who obtains a preliminary injunction must post a bond to secure the nonmovant against any wrongful damages it suffers as a result of the injunction. FED. R. CIV. P. 65(c).

The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citing *Callaway*, 489 F.2d at 572). A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). Even when a movant satisfies each of the four *Callaway* factors, the decision of whether to grant or deny a preliminary injunction remains discretionary with the district court. *Miss. Power & Light*, 760 F.2d at 621.

### III. THE COURT GRANTS CGC'S APPLICATION FOR PRELIMINARY INJUNCTION

#### A. *There Exists a Substantial Likelihood that CGC Will Ultimately Prevail on the Merits of its TUTSA Claim*

To establish a violation of TUTSA, a plaintiff must show: (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) use of the trade secret without authorization from the plaintiff. *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 600 (5th Cir. 2015); *see also Miller v. Talley Dunn Gallery, LLC*, 2016 WL 836775, at *12 (Tex. App. – Dallas Mar. 3, 2016, no pet.). TUTSA defines trade secret as "information" that (1) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." TEX. CIV. PRAC. & REM. CODE § 134A.002(6); *see also Baxter & Assocs., LLC v. D & D Elevators, Inc.*, 2017 WL 604043, at *6 (Tex. App. – Dallas Feb. 15, 2017, no pet.). In the context of a preliminary injunction application, "the trial court does not decide whether the information sought to be protected is a trade secret. Rather, it determines whether the applicant has established the information is entitled to trade secret protection until a trial on the merits." *Talley Dunn Gallery*, 2016 WL 836775, at *12.

Here, CGC has demonstrated that there exists a substantial likelihood that it will ultimately prevail on the merits of its TUTSA claim. First, CCG has sufficiently established that the Asset Bundle likely includes trade secrets and is entitled to trade secret protection until trial on the merits. Although MyndShft, OS, and Wince argue that CGC has not

identified the trade secret with sufficient detail, it has. In particular, CGC points to OMS and its proprietary source code as information that derives independent economic value from not being generally known. And CGC has further described that the source code's secrecy was maintained through both signing confidentiality agreements and limiting access to a small group of individuals within the company and only one individual outside of the company: OS's Chief Technology Officer David Morris. At this stage, CGC has thus adequately identified a trade secret.

Second, CGC has sufficiently demonstrated that MyndShft and Wince acquired the trade secret through improper means. In its complaint, CGC suggests at least two improprieties in MyndShft's acquisition of the Asset Bundle: (1) fraudulent misrepresentation in falsely claiming that MyndShft was interested in both acquiring OS and purchasing the Asset Bundle and (2) breach of contract in OS assigning its rights to the Asset Bundle to MyndShft without first obtaining CGC Asset's written consent. CGC carries its burden on this element if any one of these two forms of misappropriation is substantially likely. And here, the record demonstrates that it is indeed likely that OS breached the BRA by assigning its license to use OMS to MyndShft without securing CGC Asset's prior written consent. MyndShft, OS, and Wince try to evade the fatality of CGC's theory by characterizing the relevant BRA provision as merely being a right to object to an assignment, which CGC Asset purportedly did not do. But the BRA provision was not a right to object; it was instead a requirement to obtain prior written consent. Because OS apparently did not first receive CGC Asset's written consent before assigning its rights to the Asset Bundle to MyndShft, it is likely that MyndShft and Wince misappropriated the trade secret at issue.

Third, it is undisputed that MyndShft and Wince are using the trade secret without authorization from CGC. Not only did CGC Asset not give its prior written consent to the assignment at issue, but there is also no evidence that CGC has since explicitly authorized MyndShft and Wince's use of the Asset Bundle. As a result, CGC has established that it will likely succeed on the merits of its TUTSA claim.[1]

### B. There Exists a Substantial Threat that CGC Will Suffer Irreparable Injury if the Injunction is Not Granted

"Because both the availability and the measure of damages are governed by state law in a diversity case, it follows that state law also governs whether certain injuries qualify as irreparable for the purposes of granting a preliminary injunction." *Heil Trailer Int'l Co. v. Kula*, 542 Fed. App'x 329, 335 (5th Cir. 2013). To show irreparable harm for misappropriation of trade secrets under Texas law, a movant need show only that "the defendant possesses the trade secrets and is in a position to use them." *Hughes v. Age Indus., Ltd.*, 2017 WL 943423, at *5 (Tex. App. – San Antonio Mar. 8, 2017, no pet.) (collecting cases). Because it is uncontested that MyndShft and Wince possess the Asset Bundle and are in a position to use it, CGC has established this element of irreparable injury.

---

[1] Because the Court determines that CGC has carried its burden for preliminary injunction on its trade secret misappropriation claim under TUTSA, the Court need not – and does not – assess the merits of the same claim under DTSA.

ORDER – PAGE 7

### C. The Threatened Injury to CGC Outweighs Whatever Damage the Injunction May Cause MyndShft and Wince

CGC has further demonstrated that its threatened injury outweighs any damage an injunction may cause MyndShft and Wince. At present, CGC is concerned that MyndShft and Wince's probable trade secret misappropriation will harm CGC's ability to compete in the marketplace, preserve its business interests, and maintain the secrecy and value of the Asset Bundle. In particular, CGC contends that, absent an injunction, MyndShft and Wince will likely use the proprietary OMS source code in their own and their customers' businesses and such unrestricted dissemination of the trade secret will thus cloud title to the Asset Bundle and decrease its value. In response, MyndShft and Wince argue that an injunction would harm them by foreclosing a significant portion of their business. But MyndShft and Wince also claim that granting CGC's requested relief is pointless because the injunction would allow them to use the Asset Bundle *in the same manner* as it is currently being used. *See* Defs.' Resp. 19 [16] (explaining that MyndShft and Wince are currently only using the Asset Bundle to service existing and future customers in accordance with the terms of CGC's requested preliminary injunction). MyndShft and Wince cannot have it both ways. Based on this admission, however, the Court is convinced that the threatened injury to CGC outweighs whatever – if any – damage an injunction may cause MyndShft and Wince.

### D. Granting the Injunction is Not Adverse to the Public Interest

Finally, granting an injunction in the instant case is not adverse to the public interest. As their sole argument on this requirement for preliminary injunction, MyndShft, OS, and Wince argue that the public interest of enforcing a trade secret misappropriation claim does

not apply where the other three requirements are not met. But, as discussed above, CGC has demonstrated that it is likely to succeed on its TUTSA claim, there exists a substantial threat of irreparable injury, and its threatened injury outweighs any damages to MyndShft and Wince. Further, because the public interest is served by protecting trade secret information, CGC has satisfied this final requirement for preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court grants CGC's application for preliminary injunction. By separate document of this same date, the Court issues the requested preliminary injunction.

Signed June 4, 2018.

David C. Godbey
United States District Judge